AO 257 (Rev. 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT

☐ SUPERSEDING

**OFFENSE CHARGED**

SEE ATTACHMENT

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:  SEET ATTACHMENT

---

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

FILED

**DEFENDANT - U.S**

▶ PANTELIS THOMAS

JUL - 9 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

DISTRICT COURT NUMBER

**CR08-448 CW**

---

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)

UNITED STATES COAST GUARD

☐ person is awaiting trial in another Federal or State Court, give name of court

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY   ☐ DEFENSE

}  SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

}  MAGISTRATE CASE NO.

4-08-70357 WDB

Name and Office of Person Furnishing Information on this form   JOSEPH P. RUSSONIELLO

☒ U.S. Attorney   ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)   STEPHEN G. CORRIGAN, AUSA

---

**DEFENDANT**

**IS *NOT* IN CUSTODY**

1) ☐ Has not been arrested, pending outcome this proceeding.
   If not detained give date any prior summons was served on above charges ▶

2) ☐ Is a Fugitive

3) ☒ Is on Bail or Release from (show District)

   Northern District of California

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction   }   ☐ Federal   ☐ State

6) ☐ Awaiting trial on other charges

   If answer to (6) is "Yes", show name of institution

Has detainer been filed?   ☐ Yes   ☐ No

If "Yes" give date filed

DATE OF ARREST   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY   ▶   Month/Day/Year

☐ This report amends AO 257 previously submitted

---

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:

☐ SUMMONS   ☒ NO PROCESS*   ☐ WARRANT   Bail Amount:

If Summons, complete following:
☐ Arraignment   ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:        Before Judge:

Comments:

PENALTY SHEET ATTACHMENT

*UNITED STATES v. CASILDA SHIPPING, LTD., GENESIS SEATRADING CORP., and PANTELIS THOMAS*

**DEFENDANT:**    **PANTELIS THOMAS**

COUNT ONE:       (18 U.S.C. § 371 – Conspiracy)
PENALTY:         Imprisonment:        Not More Than Five Years
                 Fine:                Not More Than $250,000
                 Supervised Release:  Not More Than Three Years

COUNT TWO:       (18 U.S.C. § 1001(a) – False Statements)
PENALTY:         Imprisonment:        Not More Than Five Years
                 Fine:                Not More Than $250,000
                 Supervised Release:  Not More Than Three Years

COUNT THREE:     (18 U.S.C. § 1001(a) – False Statements)
PENALTY:         Imprisonment:        Not More Than Five Years
                 Fine:                Not More Than $250,000
                 Supervised Release:  Not More Than Three Years

COUNT FOUR:      (33 U.S.C. § 1908(a) – Act to Prevent Pollution from Ships)
PENALTY:         Imprisonment:        Not More Than Ten Years
                 Fine:                Not More Than $250,000
                 Supervised Release:  Not More Than Three Years

COUNT FIVE:      (33 U.S.C. § 1908(a) – Act to Prevent Pollution from Ships)
PENALTY:         Imprisonment:        Not More Than Ten Years
                 Fine:                Not More Than $250,000
                 Supervised Release:  Not More Than Three Years

COUNT SIX:       (18 U.S.C. § 1519 – Falsification of Records)
PENALTY:         Imprisonment:        Not More Than Twenty Years
                 Fine:                Not More Than $250,000
                 Supervised Release:  Not More Than Three Years

COUNT SEVE:      (18 U.S.C. § 1519 – Falsification of Records)
PENALTY:         Imprisonment:        Not More Than Twenty Years
                 Fine:                Not More Than $250,000
                 Supervised Release:  Not More Than Three Years

ASSESSMENT:      Mandatory $100 Special Assessment **each count**.

AO 257 (Rev. 6/78)

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT  *E-filing*
☐ SUPERSEDING

---- OFFENSE CHARGED ----

SEE ATTACHMENT

☐ Petty
☐ Minor
☐ Misde-
  meanor
☒ Felony

PENALTY: SETT ATTACHMENT

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

**FILED**

JUL 9 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

---- DEFENDANT - U.S ----

► CASILDA SHIPPING, LTD.

DISTRICT COURT NUMBER

**CR08-448** *CW*

---- PROCEEDING ----

Name of Complainant Agency, or Person (& Title, if any)

UNITED STATES COAST GUARD

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
  ☐ U.S. ATTORNEY  ☐ DEFENSE

} SHOW
DOCKET NO.

☐ this prosecution relates to a
pending case involving this same
defendant

MAGISTRATE
CASE NO.

☒ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under

} 4-08-70357 WDB

Name and Office of Person
Furnishing Information on this form     JOSEPH P. RUSSONIELLO

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)     STEPHEN G. CORRIGAN, AUSA

---- DEFENDANT ----

**IS *NOT* IN CUSTODY**
  Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
     summons was served on above charges ►

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction

6) ☐ Awaiting trial on other charges
}  ☐ Federal  ☐ State

     If answer to (6) is "Yes", show name of institution

Has detainer  ☐ Yes
been filed?   ☐ No
} If "Yes"
give date
filed

DATE OF
ARREST ►

Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED
TO U.S. CUSTODY ►

Month/Day/Year

☐ This report amends AO 257 previously submitted

---- ADDITIONAL INFORMATION OR COMMENTS ----

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT     Bail Amount:

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment*

Date/Time:                    Before Judge:

Comments:

PENALTY SHEET ATTACHMENT

*UNITED STATES v. CASILDA SHIPPING, LTD., GENESIS SEATRADING CORP., and*
*PANTELIS THOMAS*

**DEFENDANT:     CASILDA SHIPPING, LTD.**

COUNT ONE:      (18 U.S.C. § 371 – Conspiracy)
PENALTY:        Fine:          Not More Than $500,000
                Probation:     Not More Than Five Years

COUNT TWO:      (18 U.S.C. § 1001(a) – False Statements)
PENALTY:        Fine:          Not More Than $500,000
                Probation:     Not More Than Five Years

COUNT THREE:    (18 U.S.C. § 1001(a) – False Statements)
PENALTY:        Fine:          Not More Than $500,000
                Probation:     Not More Than Five Years

COUNT FOUR:     (33 U.S.C. § 1908(a) – Act to Prevent Pollution from Ships)
PENALTY:        Fine:          Not More Than $500,000
                Probation:     Not More Than Five Years

COUNT FIVE:     (33 U.S.C. § 1908(a) – Act to Prevent Pollution from Ships)
PENALTY:        Fine:          Not More Than $500,000
                Probation:     Not More Than Five Years

COUNT SIX:      (18 U.S.C. § 1519 – Falsification of Records)
PENALTY:        Fine:          Not More Than $500,000
                Probation:     Not More Than Five Years

COUNT SEVEN:    (18 U.S.C. § 1519 – Falsification of Records)
PENALTY:        Fine:          Not More Than $500,000
                Probation:     Not More Than Five Years

ASSESSMENT:     Mandatory $400 Special Assessment **each count**.

AO 257 (Rev. 6/78)

| DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT |
|---|

BY: ☐ COMPLAINT  ☐ INFORMATION  ☒ INDICTMENT

☐ SUPERSEDING

**OFFENSE CHARGED**

SEE ATTACHMENT

☐ Petty
☐ Minor
☐ Misde-meanor
☒ Felony

PENALTY:  SEE ATTACHMENT

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

E-Filing

FILED

JUL - 9 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

**DEFENDANT - U.S**

▶ GENESIS SEATRADING CORP.

DISTRICT COURT NUMBER

CR08 - 448 CW

**PROCEEDING**

Name of Complainant Agency, or Person (& Title, if any)

UNITED STATES COAST GUARD

☐ person is awaiting trial in another Federal or State Court, give name of court

_____

☐ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

_____

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE
}
SHOW DOCKET NO.

_____

☐ this prosecution relates to a pending case involving this same defendant
}
MAGISTRATE CASE NO.

☒ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under
4-08-70357 WDB

Name and Office of Person
Furnishing Information on this form    JOSEPH P. RUSSONIELLO

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)    STEPHEN G. CORRIGAN, AUSA

**DEFENDANT**

**IS *NOT* IN CUSTODY**
1) ☒ Has not been arrested, pending outcome this proceeding.
If not detained give date any prior summons was served on above charges ▶ _____

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

_____

**IS IN CUSTODY**
4) ☐ On this charge

5) ☐ On another conviction
}
☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

_____

Has detainer been filed?  ☐ Yes    If "Yes" give date filed
☐ No

DATE OF ARREST ▶ _____    Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶ _____    Month/Day/Year

☐ This report amends AO 257 previously submitted

**ADDITIONAL INFORMATION OR COMMENTS**

PROCESS:
☐ SUMMONS  ☒ NO PROCESS*  ☐ WARRANT    Bail Amount: _____

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time: _____    Before Judge: _____

Comments:

PENALTY SHEET ATTACHMENT

*UNITED STATES v. CASILDA SHIPPING, LTD., GENESIS SEATRADING CORP., and PANTELIS THOMAS*

**DEFENDANT:**    **GENESIS SEATRADING CORP.**

| COUNT ONE: | (18 U.S.C. § 371 – Conspiracy) | |
|---|---|---|
| PENALTY: | Fine: | Not More Than $500,000 |
| | Probation: | Not More Than Five Years |

| COUNT TWO: | (18 U.S.C. § 1001(a) – False Statements) | |
|---|---|---|
| PENALTY: | Fine: | Not More Than $500,000 |
| | Probation: | Not More Than Five Years |

| COUNT THREE: | (18 U.S.C. § 1001(a) – False Statements) | |
|---|---|---|
| PENALTY: | Fine: | Not More Than $500,000 |
| | Probation: | Not More Than Five Years |

| COUNT FOUR: | (33 U.S.C. § 1908(a) – Act to Prevent Pollution from Ships) | |
|---|---|---|
| PENALTY: | Fine: | Not More Than $500,000 |
| | Probation: | Not More Than Five Years |

| COUNT FIVE: | (33 U.S.C. § 1908(a) – Act to Prevent Pollution from Ships) | |
|---|---|---|
| PENALTY: | Fine: | Not More Than $500,000 |
| | Probation: | Not More Than Five Years |

| COUNT SIX: | (18 U.S.C. § 1519 – Falsification of Records) | |
|---|---|---|
| PENALTY: | Fine: | Not More Than $500,000 |
| | Probation: | Not More Than Five Years |

| COUNT SEVEN: | (18 U.S.C. § 1519 – Falsification of Records) | |
|---|---|---|
| PENALTY: | Fine: | Not More Than $500,000 |
| | Probation: | Not More Than Five Years |

ASSESSMENT:    Mandatory $400 Special Assessment **each count**.

E-filing

# United States District Court

## FOR THE
## NORTHERN DISTRICT OF CALIFORNIA

### VENUE: OAKLAND

---

UNITED STATES OF AMERICA,

V.

## CR08-448

PANTELIS THOMAS,
CASILDA SHIPPING, LTD., AND
GENESIS SEATRADING CORP.,

DEFENDANT(S).

---

# INDICTMENT

18 U.S.C. § 371 – Conspiracy; 18 U.S.C. § 1001 – False Statements
to United States Coast Guard; 33 U.S.C. § 1908(a) – Act to Prevent
Pollution from Ships; 18 U.S.C. § 1519 – Falsification of Records

A true bill.

_____ Foreman

Filed in open court this _____9TH_____ day of

JULY 2008.

_____ Clerk

Bail, $ _____    7-9-08

E-filing

FILED

2008 JUL -9 PM 1: 43

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  JOSEPH P. RUSSONIELLO (CBN 44332)
   United States Attorney
2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                   OAKLAND DIVISION

11

12  UNITED STATES OF AMERICA,           )   No.  **CR08-448** *CW*
                                        )
13         Plaintiff,                    )
                                        )   VIOLATIONS:  18 U.S.C. § 371 –
14                                       )   Conspiracy; 18 U.S.C. § 1001 – False
       v.                                )   Statements to United States Coast Guard; 33
15                                       )   U.S.C. § 1908(a) – Act to Prevent Pollution
                                        )   from Ships; 18 U.S.C. § 1519 – Falsification
16  PANTELIS THOMAS,                     )   of Records
    CASILDA SHIPPING, LTD., and          )
17  GENESIS SEATRADING CORP.,            )
                                        )   OAKLAND VENUE
18         Defendants.                   )
                                        )
19  _____ )

20

21                      I N D I C T M E N T

22  The Grand Jury charges:

23                        **INTRODUCTION**

24         At all times relevant to this Indictment:

25         1.      The *Motor Vessel Rio Gold* (hereinafter, "*Rio Gold*") was a 23,663-ton ocean-

26  going bulk cargo ship that is approximately 626 feet in length.  The *Rio Gold* was built and sent

27  to sea in 1984.  The vessel was owned by defendant, CASILDA SHIPPING LTD.  Defendant

28  CASILDA SHIPPING LTD., is based in Valletta, Malta.  The vessel was operated by defendant,

INDICTMENT

1  GENESIS SEATRADING CORPORATION. Defendant, GENESIS SEATRADING

2  CORPORATION is based in Piraeus, Greece. The *Rio Gold* was registered in Malta, as a

3  Maltese flag ship, and has an International Maritime Organization ("IMO") number of 8408521.

4  The *Rio Gold*  was engaged in the carriage of bulk products in world-wide commerce. It had a

5  crew of approximately twenty-four people who served either on the deck or in the engine room.

6      2.      Working in the Deck Department of the *Rio Gold*, there was a crew of

7  approximately ten seamen of different ranks. By order of rank, those seamen included the

8  following: the Chief Officer; the Second Officer; the Third Officer; the Bosun; three Able

9  Seamen; and three Ordinary Seamen. The deck crew members were responsible for the vessel's

10  deck operations.

11      3.      Working in the Engine Department of the *Rio Gold*, there was a crew of

12  approximately ten seamen of different ranks. By order of rank, those seamen included the

13  following: the Chief Engineer; the Second Engineer; the Third Engineer; the Fourth Engineer;

14  the Electrician; three Oilers; the Fitter; and the Wiper. The remainder of the crew consisted of

15  the Cook and two Messboys. The entire crew was led by the Captain—sometimes called "the

16  Master"—of the vessel.

17      4.      Defendant PANTELIS THOMAS was the Chief Engineer aboard the *Rio Gold*.

18  He served as the vessel's Chief Engineer since coming aboard on or about December 28, 2007

19  until about May 27, 2008. As Chief Engineer, defendant PANTELIS THOMAS had overall

20  responsibility for the operations of the Engine Department, including the supervision of daily

21  operations, formulation and implementation of engine room procedures, and verification that all

22  systems were functioning properly. Defendant PANTELIS THOMAS was also responsible for

23  keeping and maintaining the vessel's Oil Record Book—which is a required log regularly

24  inspected by the United States Coast Guard ("U.S. Coast Guard") when conducting Port State

25  Control examinations. The Oil Record Book is a written record in which the transfer and

26  disposal of all oil-contaminated waste and the discharge overboard and other disposal of sludge,

27  oily mixtures, slops from bilges and bilge waste water that has accumulated in machinery spaces

28  must be promptly recorded and retained onboard the vessel for inspection. As Chief Engineer,

INDICTMENT                                    2

1  defendant PANTELIS THOMAS supervised all Engine Department crew members and was

2  responsible for making entries into the Oil Record Book.

3      5.      On or about May 26, 2008, the *Rio Gold* arrived at the Port of Oakland in

4  Oakland, California. On May 27, 2008, the U.S. Coast Guard boarded the *Rio Gold* at the Port of

5  Oakland and began conducting a regulatory inspection. The regulatory inspection developed

6  information giving reasonable grounds to begin a subsequent criminal investigation. During that

7  investigation, the U.S. Coast Guard confirmed that prior to arriving at the Port of Oakland, the

8  *Rio Gold* had entered approximately five other United States ports within the past year. The

9  location and approximate dates of those United States port of calls are as follows:

10      •      Houston, Texas on or about September 23, 2007;

11      •      New Orleans, Louisiana on or about September 29, 2007;

12      •      New Orleans, Louisiana on or about October 24, 2007;

13      •      New Orleans, Louisiana on or about December 7, 2007; and

14      •      Barbers Point, Hawaii on or about May 18, 2008.

15                        **MARINE CARGO SHIP OPERATIONS**

16      6.      There are four large cranes on the deck of the *Rio Gold* that are used to transfer

17  cargo to and from the vessel's four large cargo holds. Each of the four cranes has a fabricated

18  metal drum at its base. Each drum is designed to collect the hydraulic oil that leaks from the

19  adjacent crane and to prevent that hydraulic oil from spilling onto the vessel's deck. The deck

20  crew must transfer the hydraulic oil collected in the drums into the ship's holding tanks for either

21  incineration in the vessel's incinerator or for shore-based disposal at a port facility.

22      7.      Prior to arriving at the Port of Oakland, the *Rio Gold* had delivered a cargo load of

23  powdered cement to a port in Hawaii. When cargo vessels transport cement it is common for the

24  powdered cement to collect in the cargo hold and the deck area. As the powdered cement mixes

25  with moisture from sea water and weather, the cement begins to harden requiring labor-intensive

26  cleanup. A common method to loosen and clean the hardened cement from the cargo hold and

27  the deck areas is for the deck crew to scrub and scrape the areas after spraying with hydrochloric

28  acid and sea water. The *Rio Gold* stored its cleaning agents, like hydrochloric acid, in the Bosun

INDICTMENT                              3

1 │ storage compartment located in the bow of the vessel.

2 │     8.    The engine department operations on large marine cargo vessels, including the

3 │ *Rio Gold*, generate large quantities of sludge that is created during the process of purifying fuel

4 │ oil, lubricating oil, and other petroleum products that are used in the vessel's engines. That

5 │ resulting sludge by-product is transferred to a sludge tank that is located in an area in the bottom

6 │ of the vessel, known as the bilges. The sludge may be disposed of either by incineration in the

7 │ vessel's incinerator or by off-loading it at a shore-based disposal port facility.

8 │     9.    The engine department operations on large marine cargo vessels, including the

9 │ *Rio Gold*, also generate large quantities of oil-contaminated bilge waste created when water

10 │ collects and mixes in the bottom of the vessel with oil leaked and dripped from the engine's

11 │ lubrication and fuel systems. These "oily mixtures," also known as "bilge slops" and "slops from

12 │ bilges" are collected, stored, and processed to separate the water from the oil and other wastes.

13 │ The water separation involves the use of a pollution prevention control devices known as an Oil

14 │ Water Separator and an oil-sensing device known as an Oil Content Meter. The Oil Water

15 │ Separator works by separating the oil from the water. After the Oil Water Separator separates the

16 │ oil from the water, the oil is transferred to a bilge holding tank near the sludge tank, and the

17 │ water is transferred to the Oil Content Meter. The Oil Content Meter then evaluates the oil

18 │ content in a sample of the effluent that comes from the Oil Water Separator. If the Oil Content

19 │ Meter determines that the oil content of the effluent exceeds 15 parts per million ("ppm"), then

20 │ an audio and visual alarm would sound, thereby triggering a solenoid three-way valve to redirect

21 │ the unclean effluent to a storage tank in the vessel. If the Oil Content Meter determines that the

22 │ oil content of the effluent was 15 ppm or less, then the effluent is sufficiently clean and is

23 │ discharged overboard.

24 │     10.    Large marine vessels, including the *Rio Gold*, also generate significant quantities

25 │ of garbage waste in the course of their operations. Vessels may always retain garbage onboard

26 │ for shore-based disposal at a port facility. Vessels may also dispose of garbage through

27 │ incineration, or, as more fully described below, by disposing of specified non-plastic garbage into

28 │ the ocean when within appropriate maritime zones.

INDICTMENT                     4

**LEGAL FRAMEWORK**

11.    The United States is part of an international agreement known as the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978 (the "MARPOL Protocol") that regulates the discharge of oil, garbage, and other substances from vessels at sea. The MARPOL Protocol was embodied in agreements that the United States ratified and was implemented in the United States by the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. § 1901, *et seq.* APPS makes it a crime for any person to knowingly violate the MARPOL Protocol, APPS, or regulations promulgated under APPS. These regulations apply to all commercial vessels operating in the navigable waters of the United States or while in a port or terminal under the jurisdiction of the United States, including vessels operating under the authority of a country other than the United States.

12.    The MARPOL Protocol established an international regime for the treatment and disposal of oily mixtures generated from the machinery spaces of vessels. Under the MARPOL Protocol, machinery space waste would be discharged overboard into the ocean only if it did not exceed fifteen (15) ppm of oil and the ship had in operation the required pollution prevention equipment, to include oil filtering equipment (e.g., an Oil Water Separator), an alarm, and an automatic stopping device (e.g., an Oil Content Meter and a solenoid three-way valve) to prevent the discharge of a mixture containing more than the legally permitted concentration of oil.

13.    Consistent with the MARPOL Protocol requirements, the APPS regulations require that a ship of 400 gross tons or more, such as the *Rio Gold*, maintain a written record known as an Oil Record Book, in which the transfer and disposal of all oil-contaminated waste and the discharge overboard and disposal otherwise of sludge, oily mixtures, slops from bilges and bilge waste water that has accumulated in machinery spaces must be recorded. 33 C.F.R. §§ 151.09(a)(5), 151.25 (a) and (d); MARPOL Annex I, Regulation 17 and Appendix III. Discharges from the machinery spaces of a ship must be fully and accurately recorded in the Oil Record Book without delay by the person in charge of the operations. 33 C.F.R. § § 151.25(d) and (h). The Oil Record Book is also required to record any emergency, accidental, or other exceptional discharges of oil or mixtures, including a statement of the circumstances of, and

1  reasons for, the discharge. 33 C.F.R. § 151.25(g). The Oil Record Book must be maintained

2  onboard the vessel for not less than three years, and be readily available for inspection at all

3  times. 33 C.F.R. § 151.25(k), MARPOL Annex I, Regulation 17(6).

4      14.    Also consistent with the MARPOL Protocol requirements, the APPS regulations

5  require that a ship of 400 gross tons or more maintain a written record, commonly known as a

6  Garbage Record Book, in which the disposal or discharge of anything overboard must be

7  recorded by the master or a person in charge of the ship. 33 C.F.R. §§ 151.51(a)(2), 151.55(b).

8  The written record of any overboard disposal or discharge must contain information as to the type

9  of disposal or discharge, the date and time, the latitude and longitude of the location where the

10 operation was conducted and the estimated distance of that location from shore, the amount of

11 garbage involved described by volume in cubic meters, and a description of the contents of the

12 discharge. 33 C.F.R. § 151.55(c). Such written record must be prepared at the time of the

13 operation and maintained on the ship for two years following the operation, and made available

14 for inspection by the Coast Guard. 33 C.F.R. § 151.55(d).

15     15.    Additionally, MARPOL Annex V regulates the discharge of garbage into the sea

16 and flatly prohibits the discharge of plastic into any ocean area. MARPOL Annex V, Regulation

17 3(1)(a). The United States Code provides that the requirements of MARPOL Annex V applies to

18 any ship while in the navigable waters or the exclusive economic zone of the United States. 33

19 U.S.C. § 1902(a)(3). The United States Code further provides that such ships may be inspected

20 and that MARPOL violations are punishable under the United States Code. 33 U.S.C. §§

21 1907(d)(2), 1908(a). MARPOL requires each ship of greater than 400 gross tons to maintain a

22 "garbage management plan" and a "garbage record book." MARPOL Annex V, Regulation 9(2),

23 (3). MARPOL requires the Garbage Record Book to contain a record of "each discharge

24 operation" and that the record be "kept on aboard the ship" and "available for inspection."

25 MARPOL Annex V, Regulations 9(3)(a), 9(3)(c).

26     16.    Port states, such as the United States, conduct inspections, known as Port State

27 Control examinations, to verify compliance with MARPOL requirements and other international

28 standards in their ports and navigable waters. Failure to comply with MARPOL requirements

INDICTMENT              6

1    can form the basis of an order to refuse to allow a ship to enter port, to prohibit the ship from

2    leaving port without remedial action, or to refer the matter to the flag state—which is the

3    designated country that exercises regulatory control over a commercial vessel—or, where

4    appropriate, prosecution in the United States.  MARPOL Articles 4, 5, 6.

5        17.    The U.S. Coast Guard, an agency of the United States Department of Homeland

6    Security, is charged with enforcing the laws of the United States and is empowered under Title

7    14, United States Code, Section 89(a), to board vessels and conduct inspections and

8    investigations of potential violations and to determine compliance with the MARPOL Protocol,

9    AAPS, and related regulations.  In conducting inspections, U.S. Coast Guard personnel rely on

10   statements of the vessel's crew and documents, including the information contained in the Oil

11   Record Book and Garbage Record Book.  The U.S. Coast Guard is specifically authorized to

12   examine a vessel's Oil Record Book, 33 C.F.R. § § 151.23(a)(3) and (c), and Garbage Record

13   Book log entries of garbage discharges, 33 C.F.R. §§ 151.63(b), 151.61, 33 U.S.C. § 1907(d)(1).

14                                    **THE OFFENSES**

15   COUNT ONE:        (18 U.S.C. § 371 – Conspiracy)

16       18.    The allegations contained in paragraphs 1 through 17 are realleged and

17   incorporated herein.

18       19.    Beginning on a date unknown, but no later than in or about July 2007, and

19   continuing until on or about May 27, 2008, in the Northern District of California and elsewhere,

20   the defendants PANTELIS THOMAS; CASILDA SHIPPING LTD., acting through its agents

21   and employees who were acting within the scope of their agency and employment, and for the

22   benefit of CASILDA SHIPPING LTD.; and GENESIS SEATRADING CORP., acting through

23   its agents and employees who were acting within the scope of their agency and employment, and

24   for the benefit of GENESIS SEATRADING CORP., and others, did knowingly and willfully

25   conspire to commit offenses against the United States, and an agency thereof, as set forth below:

26              (a)    False Statements: knowingly and willfully making false
                       statements and using false writings in a matter within the
27                     jurisdiction of the U.S. Coast Guard and Department of
                       Homeland Security, knowing the same to contain materially
28                     false, fictitious, and fraudulent entries, namely, a false Oil
                       Record Book for the *Rio Gold* that contained materially

INDICTMENT                              7

false statements and from which other material information was omitted, for the purpose of concealing overboard discharges of sludge, oil, oily mixtures, slops from bilges, and bilge water that accumulated in machinery spaces, the bypassing of required oil pollution prevention equipment, and creating the overall false impression that the vessel was being operated properly and was properly maintaining the Oil Record Book, in violation of Title 18, United States Code, Section 1001(a)(3);

(b)  <u>False Statements</u>: knowingly and willfully making false statements and using false writings in a matter within the jurisdiction of the U.S. Coast Guard and Department of Homeland Security, knowing the same to contain materially false, fictitious, and fraudulent entries, namely, a false Garbage Record Book for the *Rio Gold* that contained materially false statements and from which other material information was omitted, for the purpose of concealing overboard discharges of oil, a metal bucket, hydrochloric acid, and plastic barrels, and creating the overall false impression that the vessel was being operated properly and was properly maintaining the Garbage Record Book, in violation of Title 18, United States Code, Section 1001(a)(3);

(c)  <u>Failure to Maintain Oil Record Book</u>: knowingly failing to maintain an Oil Record Book for the *Rio Gold* in which all disposals of oil residue and discharges overboard and disposals otherwise of sludge, oil, oily mixtures, slops from bilges and bilge water that accumulated in machinery spaces were fully recorded, in violation of Title 33, United States Code, Section 1908(a) and Title 33, Code of Federal Regulations, Sections 151.25(a) and 151.25(h);

(d)  <u>Failure to Maintain Garbage Record Book</u>: knowingly failing to maintain a Garbage Record Book for the *Rio Gold* in which the overboard discharges and disposals of oil, a metal bucket, hydrochloric acid, and plastic barrels were fully recorded, in violation of Title 33, United States Code, Section 1908(a) and MARPOL Annex V;

(e)  <u>Falsification of Records</u>: knowingly altering, concealing, covering up, falsifying, and making a false entry in a record or document, namely, an Oil Record Book, with the intent to impede, obstruct, or influence the investigation and proper administration of a matter within the jurisdiction of the U.S. Coast Guard and the Department of Homeland Security and in relation to and in contemplation of a matter, namely, the U.S. Coast Guard's inspections and examinations to determine the *Rio Gold's* compliance with MARPOL and United States laws, in violation of Title 18, United States Code, Section 1519; and

(f)  <u>Falsification of Records</u>: knowingly altering, concealing,

INDICTMENT                          8

1    covering up, falsifying, and making a false entry by
     omission of material facts in a record or document, namely,
2    a Garbage Record Book, with the intent to impede,
     obstruct, or influence the investigation and proper
3    administration of a matter within the jurisdiction of the
     U.S. Coast Guard and the Department of Homeland
4    Security and in relation to and in contemplation of a matter,
     namely, the U.S. Coast Guard's inspections and
5    examinations to determine the *Rio Gold's* compliance with
     MARPOL and United States laws, in violation of Title 18,
6    United States Code, Section 1519.

7                           Manner and Means

8        20.    Among the manner and means used by the defendants and their co-

9    conspirators to effectuate this conspiracy and to further its objectives were the following:

10           (a)    It was further a part of the conspiracy that the defendants, their co-

11   conspirators and agents, and others deliberately and routinely discharged and caused the

12   discharge and disposals of oil residue including sludge, oil, oily mixtures, slops from bilges, and

13   bilge waste that accumulated in machinery spaces from the *Rio Gold*, overboard directly into the

14   ocean environment, at various times and places, using equipment and procedures that completely

15   circumvented the Oil Water Separator and Oil Content Meter.  This equipment included a

16   portable pump, by-pass pipes, hoses, and connectors.  Such by-pass equipment is commonly

17   referred to as a "magic pipe."

18           (b)    It was further a part of the conspiracy that the defendants, their co-

19   conspirators and agents, and others concealed the by-pass equipment and reassembled the *Rio

20   Gold's* oil pollution prevention equipment when the *Rio Gold* approached United States ports in

21   order to conceal their unlawful conduct from the U.S. Coast Guard.

22           (c)    It was further a part of the conspiracy that the defendants, their co-

23   conspirators and agents, and others ordered crew members to construct and install the by-pass

24   equipment.

25           (d)    It was further a part of the conspiracy that the defendants, their co-

26   conspirators and agents, and others, including subordinate members of the *Rio Gold's*

27   engineering crew, to use the by-pass equipment to circumvent the oil water separator system to

28   enable the oily bilge water and sludge to be discharged overboard without regard to the

INDICTMENT                          9

1    concentration of oil in the discharged effluent.

2            (e)    It was further a part of the conspiracy that the defendants, their co-

3    conspirators and agents, and others made and used a false and fictitious engine room Oil Record

4    Book for the *Rio Gold* that falsely reported the lawful disposal of oil residue including sludge,

5    oil, oily mixtures, slops from bilges and bilge waste that accumulated in machinery spaces to

6    create the false impression, through material false entries and omissions in the Oil Record Book.

7            (f)    It was further a part of the conspiracy that the defendants, their co-

8    conspirators and agents, and others, at various times, directed others to discharge and dispose of

9    oil, a metal bucket, hydrochloric acid, and plastic barrels over the side of the ship and directly

10   into the ocean.

11           (g)    It was further a part of the conspiracy that the defendants, their co-

12   conspirators and agents, and others, at various times made and used a false and fictitious Garbage

13   Record Book for the *Rio Gold* that through material omissions that falsely reported the lawful

14   disposal of garbage and falsely represented that the Garbage Record Book was being properly

15   maintained.

16                                    Overt Acts

17       21.    In furtherance of the conspiracy and to accomplish the objects of the conspiracy,

18   defendants PANTELIS THOMAS, CASILDA SHIPPING LTD., GENESIS SEATRADING

19   CORP., and others, committed, and caused to be committed, various overt acts within the

20   Northern District of California and elsewhere, which included, but are not limited to, the

21   following:

22           (a)    Beginning on a date unknown, but no later than in or about July 2007, and

23   continuing until on or about May 27, 2008, the defendants caused the discharge of sludge, oil,

24   oily mixtures, slops from bilges and bilge water that accumulated in machinery spaces through

25   the use of a bypass pipe and procedures that circumvented the Oil Water Separator and/or the Oil

26   Content Meter.

27           (b)    On or about May 27, 2008, the defendants maintained and had available

28   for inspection a materially false Oil Record Book for the *Rio Gold* during a United States port

INDICTMENT                          10

1   call in Oakland, California, that falsely reported and omitted certain disposal of sludge, oil, oily

2   mixtures, slops from bilges and bilge water that accumulated in machinery spaces and created the

3   overall false and misleading impression, through the false entries and omissions, that the vessel

4   was being operated properly and was properly maintaining the Oil Record Book.

5   (c)   Between on or about May 18, 2008, and on or about May 27, 2008, the

6   defendants, and others caused the overboard discharges of oil, a metal bucket, hydrochloric acid,

7   and plastic barrels.

8   (d)   On or about May 27, 2008, the defendants, and others maintained and had

9   available for inspection a materially false Garbage Record Book for the *Rio Gold* during a United

10  States port call that falsely omitted the overboard discharge of oil, a metal bucket, hydrochloric

11  acid, and plastic barrels over the side of the ship and directly into the ocean.

12  All in violation of Title 18, United States Code, Section 371.

13  COUNT TWO:   (18 U.S.C. § 1001(a)(3) – False Statements – Oil Record Book)

14  22.   The allegations contained in paragraphs 1 through 17 and 20 through 21 are

15  realleged and incorporated herein.

16  23.   On or about May 27, 2008, in the Port of Oakland, within the internal waters of

17  the United States, and in Northern District of California, defendants PANTELIS THOMAS;

18  CASILDA SHIPPING LTD., acting through its agents and employees who were acting within the

19  scope of their agency and employment, and for the benefit of CASILDA SHIPPING LTD.; and

20  GENESIS SEATRADING CORP., acting through its agents and employees who were acting

21  within the scope of their agency and employment, and for the benefit of GENESIS

22  SEATRADING CORP., did knowingly and willfully make and use and cause the making and use

23  of materially false writings and documents, in a manner within the jurisdiction of the U.S. Coast

24  Guard and Department of Homeland Security, namely, a false and fictitious Oil Record Book for

25  the *Rio Gold* that falsely stated that sludge, oil, oily mixtures, slops from bilges and bilge water

26  that accumulated in machinery spaces had been properly treated and disposed of through an Oily

27  Water Separator, oil sensing equipment, and an incinerator, when, as the defendants well knew,

28  the waste had been discharged directly overboard through a bypass pipe that circumvented the

INDICTMENT   11

1   Oily Water Separator and the Oil Content Meter to prevent them from functioning properly.

2   All in violation of Title 18, United States Code, Section 1001(a)(3).

3   COUNT THREE:      (18 U.S.C. § 1001(a)(3) – False Statements – Garbage Record Book)

4   24.   The allegations contained in paragraphs 1 through 17 and 20 through 21 are

5   realleged and incorporated herein.

6   25.   On or about May 27, 2008, in the Port of Oakland, within the internal waters of

7   the United States, and in the Northern District of California, defendants CASILDA SHIPPING

8   LTD., acting through its agents and employees who were acting within the scope of their agency

9   and employment, and for the benefit of CASILDA SHIPPING LTD.; and GENESIS

10  SEATRADING CORP., acting through its agents and employees who were acting within the

11  scope of their agency and employment, and for the benefit of GENESIS SEATRADING CORP.,

12  did knowingly and willfully make and use and cause the making and use of materially false

13  writings and documents, in a manner within the jurisdiction of the U.S. Coast Guard and

14  Department of Homeland Security, namely, a false and fictitious Garbage Record Book for the

15  *Rio Gold* that falsely omitted the overboard discharge of oil, a metal bucket, hydrochloric acid,

16  and plastic barrels over the side of the ship and directly into the ocean.

17  All in violation of 18, United States Code, Section 1001(a)(3).

18  COUNT FOUR:      (33 U.S.C. § 1908(a) – Act to Prevent Pollution from Ships)

19  26.   The allegations contained in paragraphs 1 through 17 and 20 through 21 are

20  realleged and incorporated herein.

21  27.   On or about May 27, 2008, in the Port of Oakland, within the internal waters of

22  the United States, and in the Northern District of California and elsewhere, defendants

23  PANTELIS THOMAS; CASILDA SHIPPING LTD., acting through its agents and employees

24  who were acting within the scope of their agency and employment, and for the benefit of

25  CASILDA SHIPPING LTD.; and GENESIS SEATRADING CORP., acting through its agents

26  and employees who were acting within the scope of their agency and employment, and for the

27  benefit of GENESIS SEATRADING CORP., and others, did knowingly fail to maintain an

28  accurate Oil Record Book for the *Rio Gold*, namely by failing to disclose that defendants had

INDICTMENT                    12

1    caused the discharge of sludge, oil, oily mixtures, slops from bilges, and bilge water that

2    accumulated in machinery spaces through the use of a bypass pipe and procedures that

3    circumvented the Oil Water Separator and/or the Oil Content Meter and that falsely indicated the

4    proper use of required pollution prevention equipment.

5            All in violation of Title 33, United States Code, Section 1908(a), Title 33, Code of

6    Federal Regulations, Section 151.25.

7    COUNT FIVE:        (33 U.S.C. § 1908(a) – Act to Prevent Pollution from Ships)

8            28.    The allegations contained in paragraphs 1 through 17 and 20 through 21 are

9    realleged and incorporated herein..

10            29.    On or about May 27, 2008, in the Port of Oakland, within the internal waters of

11   the United States, and in the Northern District of California, the defendants, CASILDA

12   SHIPPING LTD., acting through its agents and employees who were acting within the scope of

13   their agency and employment, and for the benefit of CASILDA SHIPPING LTD.; and GENESIS

14   SEATRADING CORP., acting through its agents and employees who were acting within the

15   scope of their agency and employment, and for the benefit of GENESIS SEATRADING CORP.,

16   and others, did knowingly fail to maintain an accurate Garbage Record Book for the *Rio Gold*,

17   namely, by failing to disclose that defendants had caused the overboard discharges of oil, a metal

18   bucket, hydrochloric acid, and plastic barrels.

19            All in violation of Title 33, United States Code, Section 1908(a) and MARPOL Annex V.

20   COUNT SIX:        (18 U.S.C. § 1519 – Falsification of Records – Oil Record Book)

21            30.    The allegations contained in paragraphs 1 through 17 and 20 through 21 are

22   realleged and incorporated herein.

23            31.    Beginning at a time unknown but no later than July 2007, up to an including May

24   27, 2008, in the Port of Oakland, within the internal waters of the United States, and in the

25   Northern District of California, defendants, PANTELIS THOMAS; CASILDA SHIPPING LTD.,

26   acting through its agents and employees who were acting within the scope of their agency and

27   employment, and for the benefit of CASILDA SHIPPING LTD.; and GENESIS SEATRADING

28   CORP., acting through its agents and employees who were acting within the scope of their

INDICTMENT                          13

1   agency and employment, and for the benefit of GENESIS SEATRADING CORP., did knowingly

2   alter, conceal, cover up, falsify, and make a false entry in a record and document, namely, by

3   falsely representing that sludge, oil, oily mixtures, slops from bilges and bilge water that

4   accumulated in machinery spaces had been properly treated and disposed of through an Oily

5   Water Separator, oil sensing equipment, and an incinerator, and by omitting that the waste had

6   been discharged directly overboard through a bypass pipe that circumvented the Oily Water

7   Separator and the Oil Content Meter to prevent them from functioning properly an Oil Record

8   Book, as the defendants well knew, with the intent to impede, obstruct, and influence the

9   investigation and proper administration of a matter within the jurisdiction of the U.S. Coast

10  Guard and the Department of Homeland Security and in relation to and in contemplation of a

11  matter, namely, the U.S. Coast Guard's inspections and examinations to determine the *Rio*

12  *Gold's* compliance with MARPOL and United States laws.

13          All in violation of Title 18, United States Code, Section 1519.

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

INDICTMENT                                14

COUNT SEVEN:    (18 U.S.C. § 1519 – Falsification of Records – Garbage Record Book)

32.    The allegations contained in paragraphs 1 through 17 and 20 through 21 are realleged and incorporated herein.

33.    Beginning at a time unknown but no later than July 2007, up to an including May 27, 2008, in the Port of Oakland, within the internal waters of the United States, and in the Northern District of California, defendants, CASILDA SHIPPING LTD., acting through its agents and employees who were acting within the scope of their agency and employment, and for the benefit of CASILDA SHIPPING LTD.; and GENESIS SEATRADING CORP., acting through its agents and employees who were acting within the scope of their agency and employment, and for the benefit of GENESIS SEATRADING CORP., did knowingly alter, conceal, cover up, falsify, and make a false entry in a record and document, namely, by omitting from the Garbage Record Book the discharge of oil, a metal bucket, hydrochloric acid, and plastic barrels over the side of the ship and directly into the ocean, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the U.S. Coast Guard and the Department of Homeland Security and in relation to and in contemplation of a matter, namely, the U.S. Coast Guard's inspections and examinations to determine the *Rio Gold's* compliance with MARPOL and United States laws.

All in violation of Title 18, United States Code, Section 1519.

A TRUE BILL.

FOREPERSON

Dated: July 9, 2008

JOSEPH P. RUSSONIELLO
United States Attorney

W/ DOUGLAS SPRAGUE
Chief, Oakland Branch

(Approved as to form: _____ )
AUSA CORRIGAN

INDICTMENT                                  15